## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

|  |  |  |
|---|---|---|
| H.G. and M.G. through their next friend Robert Latham, C.P. through his next friend Paula Velazquez, L.T. through her next friend Robert Latham, F.C. through his next friend Stewart Cooke, S.A. N.K. through her next friend Bernard Perlmutter, for themselves and those similarly situated, | ) ) ) ) ) ) ) ) | Case 4:18-cv-00100-RH-CAS |
| **Plaintiffs**, | ) ) | |
| v. | ) ) | |
| Mike Carroll, in his official capacity as Secretary of the Florida Department of Children and Families, | ) ) ) ) | |
| **Defendant**. | ) ) ) | |

## JOINT MOTION AND MEMORANDUM FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT, SETTING HEARING FOR FINAL APPROVAL, AND DIRECTING NOTICE TO THE CLASS

The parties have entered into a proposed Settlement Agreement ("the Settlement Agreement" or "Agreement") resolving this class action lawsuit, a copy of which is attached as Exhibit A to this Motion. Judicial approval of a proposed class action settlement under Federal Rule of Civil Procedure 23 involves a two-step process. First, counsel submits the terms of the proposed settlement to the court, and the court makes a preliminary fairness evaluation. *Manual for Complex*

*Litigation (Fourth)* § 21.632 (2004). Second, if preliminary approval is granted, the court directs that notice of the settlement be given to members of the class, solicits comment and objection from class members and interested parties, and holds a formal fairness hearing to determine whether the proposed settlement is fair, reasonable, and adequate. *Id.* at § 21.633-35.

The parties jointly request that the Court enter the Proposed Order Granting Preliminary Approval of Class Action Settlement Agreement, Setting Hearing for Final Approval, and Directing Notice to the Class, a copy of which is attached as Exhibit B. The Proposed Order would (1) preliminarily approve the Settlement Agreement; (2) preliminarily certify the Class for settlement purposes; (3) authorize the form and manner of a Notice of Proposed Class Action Settlement to be sent to Class Members, a copy of which is attached as Exhibit C; (4) set the deadline for the submission of any motion for fees pursuant to the results of the arbitration process described in section X.B of the Settlement Agreement on or after May 15, 2019; (5) set the deadline for written submissions by persons who are Class Members, or legal representatives of Class Members, and who wish to be heard in favor of or in objection to the Settlement Agreement and fee motion; and (6) set the date for a hearing in accordance with Rule 23(e) of the Federal Rules of Civil Procedure on or after July 15, 2019.

2

## I.    FACTUAL AND LEGAL BACKGROUND

### a.    The Litigation

Named Plaintiffs, by their Next Friends and through counsel, commenced this action on February 20, 2018. Defendant is Chad Poppell, Secretary of DCF, in his official capacity.[1] Dkt. No. 1. On May 1, 2018, Defendant answered the Complaint, Dkt. No. 26, and the parties filed a Joint Rule 26(f) Report, Dkt. No. 27. The parties thereafter commenced an initial period of written discovery.

On May 6, 2018, the Court directed the parties to confer about the advantages and disadvantages of early mediation. Dkt. No. 28. On May 15th, counsel for the parties met in Tallahassee and discussed the advantages of such mediation. Dkt. No. 31. On May 21, the parties requested an extension of time to consider whether to proceed with mediation immediately. Dkt. No. 31. After some preliminary negotiation, the parties jointly moved for a 60-day stay to pursue mediation, which the Court granted by Order dated June 11, 2018. Dkt. No. 34. The Court issued additional orders further tolling deadlines to allow mediation

---

[1] Since this suit was filed, Former Secretary Michael Carroll resigned from office, effective September 6, 2018. Ms. Rebecca Kapusta then served as Interim Secretary until Secretary Poppell's appointment in January 2019. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."

efforts to continue. Dkt. Nos. 37, 39, 40, 41. Over approximately the last eight months, the parties have been engaged in extensive arm's length settlement negotiations under the active supervision and involvement of mediator Mr. Dominic M. Caparello and subject matter expert Mr. Kevin Ryan. The negotiations have involved production of documents, informal interviews, frequent telephonic conferences, numerous rounds of written proposals and counter-proposals, and extensive in-person conferences and discussions.

On March 11, 2019, the parties reached a settlement accord and executed the proposed Settlement Agreement.

### b.    Summary of the Settlement Agreement Terms

#### i.    <u>The Settlement Class & Class Certification</u>

The Settlement Agreement has been reached on behalf of a proposed settlement class consisting of Class Members ("Class Members") who are "all Children who are, or in the future are, in Placements," where "Children" is defined as children whose cases originate in the "Southern Region"; "Southern Region" is defined as Miami-Dade and Monroe Counties; "Placements" is defined as placement in "Foster Care"; "Foster Care" means "in accordance with section 39.01(30), Florida Statutes (2018), care provided a Child in a licensed foster family or boarding home, Group Home (as defined in the Agreement), agency boarding home, Child care institution, or any combination thereof." The definition of "Class

Member" includes a Child who is (1) on the run from or missing from any Placement or (2) who is being housed temporarily (such as a Child visiting kin, in a residential treatment center, Group Home, crisis unit or hospital, substance abuse program, boarding school, summer camp, wilderness camp, hotel, motel, Contracted Service Provider office (as defined in the Agreement), or state agency office). This does not include a Child who is placed with kin or Fictive Kin (as defined in the Agreement) at the time a sample is pulled for validation by the Auditor for purpose of Outcomes 2 and 3. Ex. A, Part I.H,J,O,V,CC & Part IX.

The Agreement provides that "[t]he Parties shall comply with all applicable aspects of Rule 23(e), including obtaining an order of preliminary approval from the Court including the form and publication of notice to Class Members and the conducting of a fairness hearing by the Court prior to final approval." Ex. A, Part IX.

ii.    <u>Workgroup & Gap Analysis</u>

The Settlement Agreement provides that "DCF will convene a Services and Placement Continuum Workgroup regarding the Southern Region . . . to inform the assessment and expansion of Placements, treatment, and Well-Being services for Class Members, and the availability and delivery of necessary, evidence-based, and promising practices and services within the service and Placement array continuum." Ex. A Part II. It further requires that, "[a]fter consultation with the

5

Workgroup, DCF will focus on and identify gaps in the continuum of Placement and services available to meet the needs (including mental health needs) of Class Members." Ex. A Part III. This Agreement sets forth certain requirements and procedures to identify gap analysis tools, implement such tools, and prepare a gap analysis report. Ex. A, Part III.A-C.

   iii. <u>Outcomes</u>

The Settlement Agreement requires that DCF shall comply substantially with three "Outcomes" measures relating to: (1) the rate of moves of Class Members from a Placement Setting in a 12-month period, Ex. A, Part IV.A.1; (2) the placement of Class Members in settings that are "stable," "in the[ir] best interests," and "consistent with achieving the [their] permanency goal(s)." Ex. A, Part IV.A.2; and (3) assurance that Class Members "shall have their mental and behavioral health needs addressed . . . during the period under review." Ex. A, Part IV.A.3.

The Agreement includes a detailed methodology and process for measuring DCF's performance on the Outcomes. The Agreement also requires that DCF's performance on each Outcome be sustained for an agreed-upon minimum duration and sets forth "due dates" for DCF's substantial compliance. Finally, the Agreement provides that "[o]nce DCF has substantially complied with Outcome 1,

2 or 3, DCF shall have no more obligations under this Agreement with respect to that Outcome." Ex. A, Part IV.C.

iv.    Placement Commitments

In addition to the Outcomes, the Agreement requires that "DCF shall substantially comply" with three Placement Commitments relating to: (1) cessation of the practice of "Placing Class Members in any hotel, motel, Contracted Service Provider, or state agency office" except in designated circumstances and with stated procedural protections, Ex. A, Part V.A; (2) limitations on when "Foster homes may . . . exceed their licensed capacity without a Capacity Waiver," Ex. A, Part V.B; and (3) limitations on when any "Class Members under the age [of] six (6) will be placed in a shift care setting without the express written approval of the [Regional Managing Director]," Ex. A, Part V.C.

The Agreement also applies a 12-month measurement period to each of these Commitments for purposes of determining Defendant's substantial compliance with them. Ex. A, Part V.A-C. Finally, the Agreement contains a process by which one or more previously satisfied Placement Commitments may be reinstated after Defendant's "exit" from their requirements. Ex. A, Part V.D.

v.    Validation

The Agreement sets forth a audit and validation process by which a designated Auditor will review and report on certain specified aspects of

7

Defendant's compliance with the Agreement. Mr. Kevin Ryan, a subject matter expert, has been selected by the parties, and has agreed, to act in this auditor role. *See* Ex. A, Part VI.A. Mr. Ryan's resume is attached as Exhibit D. The parties have agreed that "[n]either Party shall have supervisory authority of the Auditor," that "DCF shall engage the Auditor at DCF expense," and that "DCF will ensure that Auditor has access to the information and data necessary to perform the responsibilities assigned to the Auditor in th[e] Agreement." Ex. A, Part VI.A.

vi.    <u>Dispute Resolution and Court Enforcement</u>

Under the terms of the Settlement Agreement, "[t]he Parties have agreed that that they should try to resolve their differences over implementation of th[e] Agreement before returning to Court." Ex A., Part VII. To that end, the Agreement sets forth a dispute resolution process, which is "structured . . . so as to make returning to Court uncommon and the last resort." *Id.* The Settlement Agreement also sets out exceptions when the aforementioned alternative dispute resolution procedures may be bypassed. Ex A, Part VII.B.3.

vii.    <u>Attorney's Fees and Costs</u>

The Settlement Agreement provides that the parties will engage in binding arbitration to determine an award of attorney's fees and costs to be awarded to Plaintiffs' counsel. Ex. A, Part X.B. The parties have agreed to support this fee award as reasonable and appropriate in proceedings to obtain final Court approval.

*Id*. The provision of the Settlement Agreement regarding the resolution of this issue through an arbitration process was negotiated after reaching agreement on all other material terms of the Settlement Agreement.

viii.    <u>Termination of Litigation</u>

The Settlement Agreement is contingent upon the Court's issuance of "an Order dismissing this Lawsuit with prejudice, pursuant to Federal Rule of Civil Procedure 41(2)(a), after compliance with Federal Rule of Civil Procedure 23(e)." Ex. A, Part VIII. The Agreement provides that "[s]uch Order shall become effective upon payment of the fee award described in Part X of th[e] Agreement," and that it will "comply with the requirements for the entry of injunctions under Federal Rule of Civil Procedure 65(d)(1)." *Id.* Finally, the Settlement Agreement contemplates that the Court shall expressly incorporate the actual terms of the Settlement Agreement in its dismissal order and make the parties' compliance with the terms of the Settlement Agreement part of that dismissal order. *Id*.

## II.    <u>THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES</u>

"A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (quoting *Woodward v. NOR–AM Chem. Co.*, CIV. 94-0780-CB-C, 1996 WL 1063670, *14 (S.D. Ala. 1996)). District courts have discretion to certify a class under Rule 23. *Cooper v. S.*

9

*Co.*, 390 F.3d 695, 711 (11th Cir. 2004). "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks." *Pierre-Val v. Buccaneers Ltd. P'ship*, 8:14-CV-01182, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997) (noting that "[s]ettlement is relevant to a class certification").

As noted above, the parties request that the Court certify the Class Members as a Class under Rule 23(a) and (b)(2) for settlement purposes.  Class certification is appropriate where, as here, the prerequisites set forth in Rule 23(a) are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4).

First, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). The Eleventh Circuit has held that "generally . . . more than forty" class members are "adequate" in meeting this requirement. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotation marks omitted); *see also Kilgo v. Bowman Transp.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least

31 class members "from a wide geographical area"). As of December 10, 2018, there were over 1,000 children in out-of-home placements in the putative Class, and the numerosity requirement is met.

Second, the proposed class must meet the commonality requirement that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a). Establishing commonality "does not require that all the questions of law and fact raised by the dispute be common . . . or that the common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009). In their Complaint, Plaintiffs have alleged system-wide deficiencies that affect all children whose cases originate in the Southern Region and who are currently, or will be, placed in Foster Care. Plaintiffs further have alleged that these common policies, practices, and conditions subject them to common risks of harm. Finally, Plaintiffs have alleged that these common risks are subject to abatement by a common injunctive remedy. Thus, for settlement purposes, the commonality requirement is satisfied.

Third, Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This inquiry focuses on the relationship of facts and issues between the class and its representatives. *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) ("[T]ypicality measures whether a sufficient nexus exists between the

11

claims of the named representatives and those of the class at large."). The Named Plaintiffs' claims, which are fully described in the Complaint, Dkt. No. 1, are typical of those of the putative class.[2] The claims of both Named Plaintiffs and the putative Class Members arise from the same alleged policies, patterns, and practices of conduct and are based on the same legal theories. The commonality requirement is therefore satisfied for settlement purposes.

Fourth, Rule 23(a) requires the Court to find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3). "This adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (internal quotation marks omitted). Here, Named Plaintiffs seek no individualized relief but rather broad injunctive relief that will apply to the entire putative Class. Thus, this case accords a similarity of interest between the

---

[2] Although named plaintiffs H.G., M.G., F.C., and N.K. are no longer in Foster Care as defined by the Settlement Agreement, *see* Ex. A, Part I.V., "courts have found that a mooted plaintiff can satisfy the requirement of adequate representation necessary for class certification." *Kazarov v. Achim*, No. 02-cv-5097, 2003 WL 22956006, at *7 (N.D. Ill. Dec. 12, 2003); *see also Weigmann v. Glorious Food, Inc.*, 169 F.R.D. 280, 286 (S.D.N.Y. 1996) (finding mooted named plaintiff to be an adequate class representative where she "has demonstrated a desire to have the courts rectify the asserted injustices").

Class and individual claims. Further, Plaintiffs' counsel is qualified, experienced, and is committed to ensuring compliance with the Agreement. Plaintiffs' counsel includes attorneys with Children's Rights, a national non-profit with attorneys who have served as class counsel on much of the major child-welfare reform litigation, and attorneys with Baker & McKenzie, one of the world's leading law firms with extensive experience in complex federal litigation. Thus, the typicality requirement is fully satisfied.

Finally, the requirements for class certification are satisfied under Federal Rule of Civil Procedure 23(b)(2). This Rule's requirements are fulfilled where the alleged conduct "is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (internal quotation marks and citation omitted). Courts in the Eleventh Circuit, as elsewhere, have recognized that "Rule 23(b)(2) has been liberally applied in the area of civil rights." *Access Now, Inc. v. Ambulatory Surgery Ctr. Grp., Ltd.*, 197 F.R.D. 522, 529 (S.D. Fla. 2000); *Braggs v. Dunn*, 317 F.R.D. 634, 667 (M.D. Ala. 2016). Indeed, "[i]f the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)." *Nix v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 479 F.2d 382, 386 (5th Cir. 1973).

Because this action satisfies all of the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure, the parties respectfully request that this Court certify this class action for settlement purposes and appoint Plaintiffs' attorneys as Class Counsel.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

 "Although class action settlements require approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.3d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially strong in the class-action context. *See, e.g.*, *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Braynen v. Nationstar Mortg.*, *LLC*, No. 14-CV-20726, 2015 WL 6872519, at *6 (S.D. Fla. Nov. 9, 2015) ("There is a strong judicial policy favoring the pretrial settlement of class actions."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").

In considering a proposed settlement, the district court need not reach any ultimate conclusion on the substantive factual or legal issues presented. *See*

*Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978). Rather, "[a]t the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the 'range of reasonableness.'" 4 *Newberg on Class Actions* § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010); *Day v. Persels & Associates, LLC*, 729 F.3d 1309, 1326 (11th Cir. 2013) (approval should be granted when the settlement is "fair, adequate, reasonable, and not the product of collusion"). "[A]bsent fraud, collusion, or the like," the district court "should be hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Healthcare Corp.*, 447 F. App'x 976, 977-78 (11th Cir. 2011).

Here, the Settlement Agreement is the result of arm's length negotiations between informed and experienced counsel on both sides, who have concluded that its terms are fair, reasonable, and adequate for the class members. *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983) ("Courts often accord great weight to the opinions of counsel for the class in approving class action settlements."). Class Counsel has ample experience in complex civil litigation, including class actions on behalf of children in foster care, and settlements of the same. Also, Defendant is represented by attorneys at Holland & Knight LLP who are highly

skilled and experienced in class-action litigation, including class actions brought under § 1983 and the Medicaid Act. A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *see also United States v. City of Miami*, 614 F.2d 1322, 1335 (5th Cir. 1980), *on reh'g*, 664 F.2d 435 (5th Cir. 1981); *Bonnin v. Bryan I. Gerstenberg, D.D.S., P.A.*, No. 3:10-cv-188-MCR/EMT, 2011 WL 13232590, at *1 (N.D. Fla. Aug. 5, 2011) (approving settlement where "[t]he agreement was reached through an adversarial process with all parties represented by experienced counsel").

Further, the Settlement Agreement was reached after extensive negotiations that included numerous in-person mediation sessions with a highly experienced and respected mediator and subject-matter expert, and continuous back-and-forth communications over an approximately eight-month period. *See Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 435 (11th Cir. 2012) (finding no collusion where "the settlement agreement was the result of extensive arms-length negotiations moderated by a court-appointed mediator"); *Hamilton v. SunTrust Mortg. Inc.*, No. 13-cv-60749, 2014 WL 5419507, at *2 (S.D. Fla. Oct. 24, 2014) (fact that "settlement occurred only after the parties mediated over a period of months with a nationally recognized and well respected mediator" supported approval of class-action settlement); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360,

1384 (S.D. Fla. 2007) (concluding that settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Finally, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). Settlement was reached in this case after Defendant had produced approximately 129,200 pages of documents to Plaintiffs and Plaintiffs had produced approximately 41,400 pages of documents to Defendant. Plaintiffs had also collected documents and information before the filing of the Complaint through open records requests, and the parties otherwise conducted informal discovery during the course of the settlement negotiations. Thus, although the settlement occurred early, the parties developed a large amount of information sufficient to negotiate a settlement. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324-25 (S.D. Fla. 2005) (approving settlement and noting that, although settlement was early, it was "not so early that Class Counsel did not have sufficient information to negotiate with").

## IV.    THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

Rule 23 provides that "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). The standard of adequacy of a settlement notice in a class action is measured by

reasonableness. *See, e.g.*, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009). The parties in this case have agreed to the Notice of Proposed Class Action Settlement attached as Exhibit C. The proposed Notice sets forth the material terms of the proposed Settlement Agreement and comports with Rule 23 and the requirements of due process. The Notice describes the procedures for persons who wish to be heard in favor of or objection to the Settlement Agreement and will specify the date, time, and place of the formal fairness hearing to be set by the Court. The parties stand ready to make such modifications to the Notice as the Court directs.

## V. <u>CONCLUSION</u>

The proposed Settlement Agreement is fair, reasonable, devoid of obvious deficiencies, and falls within the range of possible approval. Accordingly, the parties respectfully request that the Court enter the Proposed Order Granting Preliminary Approval of Class Action Settlement Agreement, Setting Hearing for Final Approval, and Directing Notice to the Class. The Proposed Order will (1) preliminarily approve the Settlement Agreement; (2) preliminarily certify the Class for settlement purposes; (3) authorize the form and manner of a Notice of Proposed Class Action Settlement to be sent to Class Members; (4) set the deadline for the submission of any motion for fees pursuant to the results of the arbitration process described in section X.B of the Settlement Agreement; (5) set the deadline for

written submissions by persons who are Class Members, or legal representatives of Class Members, and who wish to be heard in favor of or in objection to the Settlement Agreement and fee motion; and (6) set the date for a hearing in accordance with Rule 23(e) of the Federal Rules of Civil Procedure.

Date:  March 11, 2019                    Respectfully submitted,

/s/ George Meros, Jr.                    /s/ George M. Clarke III
George Meros, Jr.                        George M. Clarke III
FL Bar No. 263321                        D.C. Bar No. 480073, *Pro hac vice*
Nathan A. Adams, IV                      Vivek A. Patel
FL Bar No. 0090492                       D.C. Bar No. 1033178, *Pro hac vice*
Holland & Knight LLP                     Baker & McKenzie LLP
315 S. Calhoun Street, Suite 600         815 Connecticut Ave, N.W.
Tallahassee, FL 32301                    Washington, District of Columbia 20006
(850) 224-7000                           (202) 452-7000
george.meros@hklaw.com                   george.clarke@bakermckenzie.com
nathan.adams@hklaw.com                   vivek.patel@bakermckenzie.com

Counsel for Defendant                    Angela C. Vigil
                                         FL Bar No. 38627
                                         Isabella de La Guardia
                                         FL Bar No. 119843
                                         Baker & McKenzie LLP
                                         1111 Brickell Avenue, Suite 1700
                                         Miami, FL 33131
                                         (305) 789-8900
                                         angela.vigil@bakermckenzie.com
                                         isabella.delaguardia@bakermckenzie.com

Ira Lustbader
N.Y. Bar No. 2516946, *Pro hac vice*
Meetra Mehdizadeh
N.Y. Bar No. 5524939, *Pro hac vice*
Mass. Bar No. 697501
Stephen Dixon
La. Bar No. 18185, *Pro hac vice*
Children's Rights, Inc.
88 Pine Street, Suite 800
New York, NY 10005
(212) 683-2210
ilustbader@childrensrights.org
mmehdizadeh@childrensrights.org
sdixon@childrensrights.org

Counsel for Plaintiffs

## <ins>CERTIFICATE OF CONFERRAL</ins>

Before filing a motion, N.D. Fla. Loc. R. 7.1(B) requires the attorney for the moving party to attempt to resolve the issue through a meaningful conference with an attorney for the adverse party. The parties have conferred and reached agreement regarding the matters set forth in this motion.

Date: March 11, 2019


/s/ George Meros, Jr.                          /s/ George M. Clarke III

George Meros, Jr.                              George M. Clarke III

FL Bar No. 263321                           D.C. Bar No. 480073, *Pro hac vice*

Holland & Knight LLP                     Baker & McKenzie LLP

315 S. Calhoun Street, Suite 600       815 Connecticut Ave, N.W.

Tallahassee, FL 32301                    Washington, DC 20006

(850) 224-7000                               (202) 452-7000

george.meros@hklaw.com             george.clarke@bakermckenzie.com


Counsel for Defendant                    Counsel for Plaintiffs

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to N.D. Fla. Loc. R. 7.1(F), counsel for Plaintiffs states this motion and memorandum has a total word count of 4,717.

Date:  March 11, 2019

/s/ George Meros, Jr.                   
George Meros, Jr.
FL Bar No. 263321
Holland & Knight LLP
315 S. Calhoun Street, Suite 600
Tallahassee, FL 32301
(850) 224-7000
george.meros@hklaw.com

Counsel for Defendant

/s/ George M. Clarke III                   
George M. Clarke III
D.C. Bar No. 480073, *Pro hac vice*
Baker & McKenzie LLP
815 Connecticut Ave, N.W.
Washington, DC 20006
(202) 452-7000
george.clarke@bakermckenzie.com

Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2019, a true and correct copy of the foregoing was filed with the Clerk of the Court for the United States District Court for the Northern District of Florida by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ George M. Clarke III
George M. Clarke III